## NO. 24-1085

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**MICHIGAN DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY, and ATTORNEY GENERAL DANA NESSEL, on behalf of the People of the State of Michigan,**

*Plaintiffs-Appellees*

*v.*

**GERALD R. FORD INTERNATIONAL AIRPORT AUTHORITY,**

*Defendant-Appellant*

Appeal from the United States District Court for the
Western District of Michigan
Hon. Jane M. Beckering, District Judge
Case No. 1:23-cv-01068-JMB-RSK

## Reply Brief of Appellant Gerald R. Ford International Airport Authority

John Sheehan
**EARTH & WATER LAW**
1455 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004
(202) 280-6362

Charles M. Denton
Aaron D. Lindstrom
Sydney O. Imes
**BARNES & THORNBURG LLP**
171 Monroe Ave NW, Ste. 1000
Grand Rapids, Michigan 495503
(616) 742-3974

*Attorneys for Defendant-Appellant,
Gerald R. Ford International Airport Authority*

# TABLE OF CONTENTS

**Page**

Table of Authorities...................................................................ii

Introduction..........................................................................1

Reply Argument ....................................................................3

I.  The appeal is not moot because of the collateral-
consequences doctrine. ....................................................3

II. The Airport Authority satisfies the requirements of the
federal-officer removal statute because it is a government
contractor assisting the FAA in carrying out firefighting
safety. .........................................................................6

    A.  The State's efforts to deny the existence of a contract
fail, and the Airport Authority presents a colorable
government-contractor defense...........................6

    B.  As a government contractor assisting the FAA with
firefighting, the Airport Authority was "acting under"
the FAA in its firefighting activities..................13

    C.  The State's suit, which expressly ties PFAS releases to
use of the FAA-mandated firefighting foam, relates to
the FAA requiring the Authority to use the PFAS-
containing firefighting foam. ...........................22

Conclusion .........................................................................25

Certificate of Compliance.....................................................26

Certificate of Service ...........................................................27

i

# TABLE OF AUTHORITIES

## CASES

*Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
25 F.4th 1238 (10th Cir. 2022) .......................................................... 23

*Bennett v. MIS Corp.*,
607 F.3d 1076 (6th Cir. 2010) ............................................................ 26

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988) ............................................................................ 14

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ......................................................................... 3, 6

*Casias v. Wal-Mart Stores, Inc.*,
695 F.3d 428 (6th Cir. 2012) ............................................................... 7

*Chafin v. Chafin*,
568 U.S. 165 (2013) ............................................................................. 3

*Doe v. BJC Health Sys.*,
89 F.4th 1037 (8th Cir. 2023) ....................................................... 16, 24

*Fritsch v. Swift Transportation Co. of Arizona, LLC*,
899 F.3d 785 (9th Cir. 2018) ............................................................. 4, 5

*Gafford v. Gen. Elec. Co.*,
997 F.2d 150 (6th Cir. 1993) ............................................................... 13

*Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*,
491 F.3d 320 (6th Cir. 2007) ................................................................ 7

*Grange Ins. Co. v. Steve Tolley & Pam Nelson Joint Venture*,
No. 21-5663, 2022 WL 612801 (6th Cir. Mar. 2, 2022) ...................... 12

*Greene v. B.F. Goodrich Avionics Systems, Inc.*,
409 F.3d 784 (6th Cir. 2005) ............................................................... 21

*Harvey v. Great Seneca Fin. Corp.*,
    453 F.3d 324 (6th Cir. 2006) ................................................................. 8

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ................................................................................ 13

*Hudak v. Elmcroft of Sagamore Hills*,
    58 F.4th 845 (6th Cir. 2023) ............................................................... 18

*Huether v. Continental Aerospace Technologies, Inc.*,
    580 F. Supp. 3d 507 (M.D. Tenn. 2022) .............................................. 20

*Latiolais v. Huntington Ingalls, Inc.*,
    951 F.3d 286 (5th Cir. 2020) ......................................................... 16, 28

*Lu Junhong v. Boeing Co.*,
    792 F.3d 805 (7th Cir. 2015) ............................................................... 19

*Mayor & City Council of Baltimore v. BP P.L.C.*,
    31 F.4th 178 (4th Cir. 2022) ......................................................... 23, 24

*Mays v. City of Flint, Michigan*,
    871 F.3d 437 (6th Cir. 2017) ................................................................. 8

*Miller v. Davis*,
    507 F.2d 308 (6th Cir. 1974) ............................................................... 12

*Miree v. DeKalb Cnty.*,
    433 U.S. 25 (1977) ................................................................................ 14

*Nichols v. Muskingum Coll.*,
    318 F.3d 674 (6th Cir. 2003) ................................................................. 7

*Ohio State Chiropractic Association v. Humana Health Plan Inc.*,
    647 F. App'x 619 (6th Cir. 2016) .................................................... 17, 26

*Papp v. Fore-Kast Sales Co.*,
    842 F.3d 805 (3d Cir. 2016) .......................................................... 6, 10

*Riggs v. Airbus Helicopters, Inc.*,
    939 F.3d 981 (9th Cir. 2019) ............................................................... 19

*Sawyer v. Foster Wheeler LLC,*
860 F.3d 249 (4th Cir. 2017) ................................................................ 16

*Watson v. Philip Morris Companies, Inc.,*
551 U.S. 142 (2007) .......................................... 15, 17, 22, 26

## STATUTES

28 U.S.C. § 1442(a) ............................................................ 1

28 U.S.C.§ 1653 ............................................................ 12

49 U.S.C. § 106(g) ............................................................ 21

49 U.S.C. § 44706(b) ............................................................ 21

49 U.S.C. § 47104(a) ............................................................ 9

49 U.S.C. § 47104(b) ............................................................ 9

49 U.S.C. § 47107(a) ............................................................ 9

49 U.S.C. § 47108 ............................................................ 9

MCL 259.135 ............................................................ 10

MCL 324.20126(1)(a) ............................................................ 28

## OTHER AUTHORITIES

CertAlert No. 16-05, *Update on Mil-Spec Aqueous Film Forming Foam (AFFF)* (Sept. 1, 2016)
https://www.faa.gov/sites/faa.gov/ files/part-139-cert-alert-16-05-Mil-Spec-AFFF-website-update.pdf ........................................................ 25

## INTRODUCTION

At the outset, the Court should be aware of a significant procedural development that the State curiously failed to mention to this Court. On May 20, 2024—a full 11 days before the State filed its appellees' brief—third-party defendants removed this case from Michigan state court. As a result of the third-party removal, a new case (Case No. 1:24-cv-520) in the Western District of Michigan now includes the State's claims against the Airport Authority, because removal by the third-party defendants removed the entire action. 28 U.S.C. § 1442(a) ("A civil action . . . may be removed").

But the State has moved to sever the State's claims against the Airport Authority and to remand those claims based on the district court's decision that is the subject of this appeal. Motion for Severance and Remand, RE 10, PageID.175, *Mich. Dep't of Environment, Great Lakes, & Energy*, No. 1:24-cv-520 (W.D. Mich.).) As a result, there is still an actual controversy over whether the Airport Authority is entitled to a federal forum, and the Airport Authority could suffer collateral consequences from a dismissal of the appeal, so this appeal is

not moot, although awaiting the district court's rulings on the State's challenges to the new removal may be efficient.

The Airport Authority is entitled to a federal forum. The State sued the Airport Authority for conduct that the Airport Authority undertook in carrying out its obligations as a contractor with the Federal Aviation Administration. Contrary to the State's arguments, the Airport Authority did not waive the fact that it is a government contractor when it raised the government-contractor defense. Because it is a government contractor and was assisting the FAA in carrying out the FAA's safety responsibilities relating to firefighting, the Airport Authority was acting under the FAA when it used FAA-required firefighting foam and engaged in FAA-mandated firefighting activities such as training and equipment testing. And because the State's suit against the Airport Authority for activities causing the release of PFAS-containing firefighting foam into the environment relates to the FAA requiring the Authority to use and discharge PFAS-containing firefighting foam, this suit satisfies the statutory "relating to" test. This Court should reverse the district court's decision remanding the Airport Authority's case to state court and allow this case to proceed in the

AFFF Multi-District Litigation in the federal district court in South Carolina where the State of Michigan's other AFFF lawsuits are already pending.

## REPLY ARGUMENT

## I.     The appeal is not moot because of the collateral-consequences doctrine.

While the State has not argued that the removal of the case by third-party defendants has rendered this appeal moot, the Airport Authority addresses this jurisdictional question because of this Court's independent duty to consider jurisdictional issues.

As the Supreme Court has explained, "[a]s long as the parties have a concrete interest, *however small*, in the outcome of the litigation, the case is not moot." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)) (emphasis added). Applying this principle, which it called the collateral-consequences doctrine, the Ninth Circuit concluded that an appeal of a remand order was not rendered moot by a second removal where the plaintiff raised a challenge to the validity of the second removal.

In *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785 (9th Cir. 2018), the defendant, Swift, timely removed the case a

first time, and when the district court remanded the case, the defendant appealed. *Id.* at 790. The defendant then filed a second notice of removal, based on precedent that allowed a new removal following a change in law. *Id.* at 791. The plaintiff argued that the appeal was rendered moot by the second removal "because the only relief available to Swift is a reversal" of the district court's remand order, which would merely do what the second removal had already done—return the case to the district court. *Id.* But the plaintiff had challenged, in the ongoing district-court proceedings, the second removal as untimely. As a result, the Ninth Circuit recognized that "Swift's appeal of the first remand order is not moot" because "if we dismiss Swift's appeal of the first remand as moot, Swift will have to defend against this timeliness challenge." *Id.* at 792. And in discussing precedent applying the Supreme Court's guidance that any interest in the outcome, "however small," prevents mootness, the Ninth Circuit recognized that the *possibility* of a collateral consequence is sufficient: "[a] reversal by this court *could* put [the plaintiff] on better footing" and "the plaintiff *might* face a *potential* statute of limitations bar against the second action." *Id.* (emphasis added; alterations in original).

The situation here is parallel. The State has moved to sever its claims against the Airport Authority and to remand those claims to state court. The Airport Authority will challenge severance of the inter-dependent third-party contribution claims, but also intends to renew its arguments for federal-officer removal in the district court, which the State presumably will oppose, and the State thus might challenge the Airport Authority's ability to rely on the second removal. Therefore, if this Court were to dismiss this appeal as moot, the Airport Authority would have to defend against this challenge, while if this Court were to reverse, then challenges to the second removal would not matter. Because there are potential collateral consequences, the appeal is not moot. *Campbell-Ewald*, 577 U.S. at 161 ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.").

II.  **The Airport Authority satisfies the requirements of the federal-officer removal statute because it is a government contractor assisting the FAA in carrying out firefighting safety.**

A.  **The State's efforts to deny the existence of a contract fail, and the Airport Authority presents a colorable government-contractor defense.**

The State argues that the Airport Authority did not raise a colorable government-contractor defense because the Airport Authority did not allege the existence of a contract in its notice of removal. (State Br. 41.) But courts resolving a jurisdictional challenge are not limited to the allegations in the notice of removal. "Because a motion to remand shares an essentially identical procedural posture with a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), it is properly evaluated using the same analytical approach," *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016), and that approach allows consideration of "evidence outside the pleadings to resolve factual disputes concerning jurisdiction . . . ." *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003); *see also Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012) ("When deciding a motion to remand . . . we may 'pierce the pleading'"); *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir.

2007) ("When ruling on a motion to remand, . . . federal courts may look beyond the pleadings to assess challenged facts").

In the district court, the State made a *factual* attack on jurisdiction, not just a *facial* one. (Mot. to Remand, RE 7, PageID.61 ("GFIAA is not a government contractor"), 74 (heading: "GFIAA's government contractor defense is not colorable since it is not a government contractor."), 75 ("it is not a government contractor"), 76 ("Because GFIAA is not a government contractor, the government contractor defense is not colorable."); Reply, RE 12, PageID.141 (describing the Airport Authority as "a non-contractor" and as "[l]acking a contract with the federal government").) As a result, the State's reliance on *Mays v. City of Flint, Michigan*, 871 F.3d 437, 446 (6th Cir. 2017), for the proposition that exhibits not cited in a notice of removal may not be considered in a *facial* challenge to jurisdiction, is misplaced, as is the State's reliance on *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 327 (6th Cir. 2006), a motion-to-dismiss case applying the Rule 12(b)(6) standard.

Here, the State challenged the existence of a contract, but the evidence before the district court supported the contract's existence. The

Airport Authority submitted a letter from the FAA showing that the Airport Authority was "an eligible Airport Improvement Program (AIP) grant sponsor" under the FAA's grant program. (FAA Letter, RE 10-1, PageID.103, 106.) The Airport Authority also explained that "federal funding of commercial airports depends upon conformance to FAA's requirements," such as "[g]rant assurances." (Opp'n, RE 10, PageID.88 & n.3.) And the Airport Authority supported this by citing "Title 49, U.S.C., subtitle VII," which includes the federal statutory scheme that governs these types of contracts—that is, the federal law that provides for project grants in return for grant assurances. *E.g.*, 49 U.S.C. § 47108 (providing that a grant offer "shall state the obligations to be assumed by the sponsor and the maximum amount the Government will pay for the project from the amounts authorized"); 49 U.S.C. § 47108; *see also* 49 U.S.C. §§ 47104(a), 47104(b), 47107(a).

Further, the State admits that "grant agreements are contractual in nature." (State Br. 34.) This evidence—indeed, the statutes by themselves—sufficiently supports the argument that there is a contract. *Papp*, 842 F.3d at 815 ("[A] defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant

asserting it identifies facts which, *viewed in the light most favorable to the defendant*, would establish a complete defense at trial.") (emphasis added).

In light of this legal framework and of its obligation to view the evidence in the light most favorable to the Airport Authority, this Court is not required to ignore the reasonable inference that the second busiest airport in Michigan has project grants—*i.e.,* contracts—with the FAA that are subject to the FAA's standard grant assurances. Recall also that the district court found that the Airport Authority's government-contractor defense was colorable. (Op., RE 13, PageID.149.) Nor is this Court required to ignore Michigan law showing that the State is directly involved in these contracts. MCL 259.135 (requiring State approval before applying for these contracts and requiring that funds from the FAA to airports pass through the State's treasury).

This is especially true given the circumstances here. First, public documents of which this Court may take judicial notice demonstrate the existence of multiple FAA project-grant contracts. (*See* Airport Authority Br. 8–9 (linking to public FAA records showing the contracts exist).) Second, the State's brief has shifted from arguing that no

9

contract exists (as it did in the district court) to arguing now only that the Airport Authority did not plead sufficiently, while being careful to no longer deny that such contracts exist. (*Compare*, *e.g.*, Mot. to Remand, RE 7, PageID.74 (heading: "GFIAA's government contractor defense is not colorable since it is not a government contractor."), *with* State Br. 2 ("the Airport Authority . . . did not allege that it had a contract"), 21 ("did not allege"), *and* 42 ("did not plead" and "failed to allege").) Given that the State is challenging only the sufficiency of the pleading, not the actual existence of a contract, this Court should take judicial notice of those contracts. *E.g.*, https://www.faa.gov/airports/aip/grant_histories/annual_reports; https://www.faa.gov/sites/faa.gov/files/airports/aip/grant_histories/annual_reports/aip-grants-awarded-by-state-fy-2015.pdf; *see* Airport Authority Br. 8–9.

Despite the above, the State also argues that the Airport Authority waived the allegation that it is a contractor in asserting its government-contractor defense and so cannot argue that jurisdictional fact on appeal, but a federal statute forecloses that argument. Congress has specifically provided that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial *or appellate courts*." 28 U.S.C.

§ 1653 (emphasis added)); *see also Miller v. Davis*, 507 F.2d 308, 311 (6th Cir. 1974) ("Amendment to establish jurisdiction is broadly permitted, so as to effectuate Congress' intent in enacting § 1653—to avoid dismissals on technical grounds."); *Grange Ins. Co. v. Steve Tolley & Pam Nelson Joint Venture*, No. 21-5663, 2022 WL 612801, at *1 (6th Cir. Mar. 2, 2022) ("Under 28 U.S.C. § 1653, parties may cure defective allegations of jurisdiction on appeal.").

This statute expressly allowing amendment in the appellate courts defeats the State's arguments that the Airport Authority waived facts about the existence of the contracts—which had been part of the district-court proceedings in which that court found that the Airport Authority raised a colorable government contractor defense. Indeed, this Court has recognized that a pleading deficiency may be cured simply by offering evidence, which is what the Airport Authority has done here by offering additional evidence of which this Court may take judicial notice. *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 164 & n.6 (6th Cir. 1993) ("If and to the extent that GE's petition for removal was technically deficient in its assertion of its principal place of business, it was cured by subsequent information GE supplied to the district court

and entered into the record of this case."), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77, 91 (2010); *id.* at 164 n.6 ("we see no point at this point in requiring GE to file a formal amended petition for removal").

In short, this Court should effectuate Congress's intent in enacting § 1653 by rejecting the State's request to find a lack of jurisdiction on technical pleadings grounds when the underlying fact that the Airport Authority is a government contractor is not subject to reasonable dispute.

Other than its pleading argument, the only other argument that the State makes about the government-contractor defense is that "there is no 'uniquely federal interest' in shielding the Airport Authority from state environmental laws" and that "[a]ny argument to the contrary is foreclosed by *Miree v. DeKalb Cnty.*, 433 U.S. 25 (1977)." (State Br. 43.) But *Miree* merely "involved the question whether certain private parties could sue as third-party beneficiaries to an agreement between a municipality and the Federal Aviation Administration." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 506 (1988). And immediately after discussing *Miree*, the *Boyle* Court distinguished *Miree* by pointing out

that "[t]he imposition of liability on Government contractors will directly affect the terms of Government contracts" and so did "directly affect[]"a uniquely federal interest. *Id.* at 507. The same is true here.

Because there is a contract here and because the State does not otherwise dispute that the Airport Authority satisfies the *Boyle* test, the Airport Authority has, as the district court recognized, a colorable federal government-contractor defense.

### B.    As a government contractor assisting the FAA with firefighting, the Airport Authority was "acting under" the FAA in its firefighting activities.

Given that the Airport Authority is a government contractor, the principle recognized in *Watson* applies: "The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007). Despite devoting four pages of its brief to *Watson*, the State never acknowledges this important principle of *Watson* and never responds to the multiple cases that the Airport Authority cited applying this precise principle. *E.g.*, *Doe v. BJC Health Sys.*, 89 F.4th 1037, 1044 (8th Cir. 2023) (stating that "[t]he classic example of a person who acts under a

federal officer is a government contractor" and citing cases); *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291 (5th Cir. 2020) (en banc) (holding that the defendant's "federal contract" satisfies the condition that "it acted 'pursuant to a federal officer's directions'"); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017) ("Foster Wheeler's status as a Navy contractor readily satisfies the requirement that it have acted under the Navy, as used in § 1442(a)(1)").

Instead, the State adopts a divide-and-conquer approach; it responds to each factor supporting that the Authority is acting under the FAA as if that factor stood alone, in a vacuum. The State argues that having a contract is not enough (State Br. 31–32), that receiving federal funds is not enough (State Br. 34), and that being subject to "highly detailed" direction is not enough (State Br. 21). But here, where the Airport Authority has *all* of these factors—it has a federal contract, receives federal funding, and is subject to detailed federal direction—it is acting under the FAA. Indeed, the State's divide-and-conquer approach is not consistent with the case on which it primarily relies, *Ohio State Chiropractic Association v. Humana Health Plan Inc.*, 647 F. App'x 619 (6th Cir. 2016). In *Ohio State Chiropractic*, this Court

14

explained that "[d]etailed regulation, monitoring, or supervision of a *contractor*, however, may signify a relationship 'unusually close' enough to 'establish the type of formal delegation' that falls within § 1442(a)." *Id.* at 622 (quoting *Watson*, 551 at 153, 156, and adding emphasis). Here, all three of those factors show an unusually close relationship that goes significantly beyond merely complying with federal regulations: the FAA supervises the Airport Authority as a contractor, the FAA supervises and monitors the Airport Authority's use of firefighting foam (including dictating that it use foam that contains PFAS), *and* the FAA subjects the Authority to detailed direction regarding how, when, and where it uses foam in equipment calibration, in training, and during FAA inspections. (*See* Airport Authority Br. 13–15, 38–40.) Those FAA-directed activities are precisely what the State claims were the "activities causing a release" of PFAS at the airport.

None of the other cases that the State cites about the "acting under" requirement help its argument. The first 14 pages of its argument (pages 17 through 31) invoke cases where the person seeking removal under § 1442(a) did not have a contract with the government. For example, in *Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845 (6th

Cir. 2023), this Court specifically noted that "Elmcroft did not have an agreement with the federal government" in concluding that it was not acting under the federal government. *Id.* at 859. In *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981 (9th Cir. 2019), the Ninth Circuit made no mention of the aircraft manufacturer having a contract with the government; instead, the manufacturer argued that it was acting "on an FAA delegation" of authority by "certify[ing] compliance with governing federal regulations." *Id.* at 983, 990. And the Ninth Circuit's discussion in *Riggs* of its own "acting under" precedents recognized that the existence of a contract matters. *Id.* at 986–87 (recognizing that in one case a "private insurer was 'acting under' a federal officer" where the federal government had "enter[ed] into a contract with the private insurer for a negotiated fee," and recognizing that in a different case where "the government did not contract with" the private entity, that entity was not acting under a federal officer). Similarly, *Lu Junhong v. Boeing Co.*, 792 F.3d 805 (7th Cir. 2015), was about an aircraft manufacturer that was not making planes for the government and was merely self-certifying that aircraft it produced were airworthy. *Id.* at 808. And the same is true of *Huether v. Continental Aerospace*

16

*Technologies, Inc.*, 580 F. Supp. 3d 507 (M.D. Tenn. 2022), which never mentioned the existence of a government contract. The State's cases were not cases where a contractor was assisting the government with a governmental function, as the Airport Authority is here by maintaining, testing, and operating firefighting equipment that the FAA requires use specifically formulated aqueous film-forming foam.

The State presents several arguments in an effort to show that the Airport Authority is not assisting the federal government. First, it argues that, even though firefighting is a governmental function, it is not a *federal* governmental function. (State Br. 27.) But Congress's directions to the FAA to provide for aviation safety, 49 U.S.C. § 106(g), show that firefighting at airports—especially interstate and international airports like the Airport Authority's—is a function of the federal government. Congress could have said nothing about firefighting and left it to local governments to attempt to provide firefighting capabilities at all of the nation's airports and to train municipal fire departments to deal with the conditions that arise during a fire on a passenger aircraft, but Congress did not take that path. Instead, Congress tasked the FAA with ensuring "safety in air

transportation" by requiring airports to "operat[e] and maintain[] adequate safety equipment, including firefighting and rescue equipment," 49 U.S.C. § 44706(b). In fact, federal law is so prescriptive that "federal law establishes the standards of care in the field of aviation safety and thus preempts the field from state regulation." *Greene v. B.F. Goodrich Avionics Systems, Inc.*, 409 F.3d 784, 795 (6th Cir. 2005). In short, these *federal statutes* giving the *Federal* Aviation Administration responsibility over aviation safety show that firefighting at an interstate airport is a *federal* function.

The fact that the FAA delegated this function to airports does not make it any less a government function; to the contrary, it shows that the Airport Authority is assisting the FAA. *Watson*, 551 U.S. at 153 ("The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks."). Consider, for example, that Congress could have created a federal agency to address *fire-related safety* at airports and called it the Transportation Fire Administration, parallel to how Congress created the Transportation Security Administration to address *security-related safety*. But instead, Congress chose to ensure

18

firefighting safety at airports through the FAA, and the FAA implements that function not just through mandatory specifications and supervision but also through requirements in its contracts with airports.

Second, the State cites cases where courts have held that government contractors were not acting under a federal officer. (State Br. 33–36.) But those cases dealt with issues such as mineral leases and designing private websites. Specifically, the first two cases the State cites involved energy companies leasing land from the federal government to extract oil and gas. *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1247 (10th Cir. 2022); *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 231 (4th Cir. 2022). In the first of these cases, the Tenth Circuit concluded that "[b]y winning bids for leases to extract fossil fuels from federal land in exchange for royalty payments, Exxon is not assisting the government with essential duties or tasks." *Suncor Energy*, 25 F.4th at 1253. The Tenth Circuit also observed that "the government does not control the manner in which Exxon drills for oil and gas, or develops and produces the product, nor has Exxon shown that a federal officer

instructed it how much fossil fuel to sell." *Id.* (cleaned up). In the second case, the Fourth Circuit similarly concluded that an oil-and-gas lease did not assist the federal government: "we are skeptical that the willingness to lease federal property or mineral rights to a private entity for the entity's own commercial purposes, without more, could ever be characterized as the type of assistance that is required to trigger the government-contractor analogy." *BP*, 31 F.4th at 232.

In the third case the State cites, the Eighth Circuit concluded that the private entity was not acting under the federal government because "[t]he design of private websites is not—and has never been—a basic governmental task." *Doe v. BJC Health Sys.*, 89 F.4th 1037, 1045 (8th Cir. 2023); *id.* ("MyBJCHealth or MyChart was not a federal government website, it was not a website BJC operated on the federal government's behalf or for the federal government's benefit, and it was not a website the federal government directed BJC to create or operate.").

In contrast to these cases, here the FAA does control the manner in which the Airport Authority, in operating an interstate and international commercial airport, maintains, tests, and operates

firefighting equipment, specifically requiring that it use a firefighting agent from a specific federal list that includes only PFAS-containing foams. CertAlert No. 16-05, *Update on Mil-Spec Aqueous Film Forming Foam (AFFF)* at 2–3 (Sept. 1, 2016) (instructing airports to "check the [Department of Defense] [Qualified Product Database] web site before each AFFF purchase"), available at https://www.faa.gov/sites/faa.gov/files/part-139-cert-alert-16-05-Mil-Spec-AFFF-website-update.pdf. And here, as discussed earlier, firefighting is a basic governmental task, not a task that "it is doubtful that the government would get into the business" of doing. *Ohio State Chiropractic*, 647 F. App'x at 624.

The State's brief conveys the idea that the presence of detailed regulation cuts *against* the Airport Authority being supervised by, guided by, and monitored by the FAA. But that is backwards: while detailed regulation, supervision, or monitoring alone may not be a *sufficient* condition to show that a private entity is acting under a federal officer, it is a *necessary* condition. *Watson*, 551 U.S. at 153 ("Government contractors fall within the terms of the federal officer removal statute, at least when the relationship between *the contractor* and the Government is an unusually close one *involving detailed*

*regulation, monitoring, or supervision.")* (emphasis added); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1088 (6th Cir. 2010) ("Under these facts, we conclude that *the contractual relationship* between MIS and the FAA was an unusually close one, *involving detailed regulation, monitoring, and supervision."*) (cleaned up); *Ohio State Chiropractic*, 647 F. App'x at 622 ("*Detailed regulation*, monitoring, or supervision of a *contractor*, however, may signify a relationship 'unusually close' enough to 'establish the type of formal delegation" that falls within § 1442(a).'") (first emphasis added). Put simply, the combination here of detailed regulation *and* a contractual relationship cuts in favor of, not against, recognizing that the Airport Authority was acting under the FAA as a government contractor, following the FAA's specific supervision and direction as to what firefighting foam to use and how to use it at this commercial airport.

### C.    The State's suit, which expressly ties PFAS releases to use of the FAA-mandated firefighting foam, relates to the FAA requiring the Authority to use the PFAS-containing firefighting foam.

The third requirement for federal-officer removal is that the action to be removed "*relat[e] to* any act under color of [federal] office . . . ." 28 U.S.C. § 1442(a)(1) (emphasis added). But the State never addresses

this plain text or the cases that the Airport Authority cited, which conclude that Congress's use of this "relating to" language "broadened federal officer removal to actions, not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc). The State does not deny that the district court applied a causation standard, instead of a "relating to" standard.

Instead, the State's argues that there is "a distinction between requirements to *use* hazardous substances and the improper *disposal* of the substances after they are used." (State Br. 38.) This argument ignores that the State's basic cause of action seeks to hold the Airport Authority "responsible for an activity causing a release" (not "disposal") of PFAS hazardous substances. MCL 324.20126(1)(a). But even if there is a distinction between use and disposal, that does not mean that the alleged disposal is not *related to* the use. Consider, for example, when firefighting foam is sprayed on an airplane that is on fire; one cannot say with a straight face that the use of the foam containing PFAS is not related to the foam hitting the ground and causing PFAS to enter the environment. And even stepping back from an emergency to consider

23

the firefighting training and equipment testing context, it is not accurate to say that using the PFAS-containing firefighting foam during FAA-mandated firefighting training is not related to improper disposal of PFAS if some of the PFAS-containing foam makes its way into the environment. Perhaps that is why the State does not deny that its own complaint alleges a direct causal relationship between the PFAS releases and the use of the FAA-specified firefighting foam: "Concentrations of PFAS substances have been detected in the soil, shallow groundwater, deep groundwater, and stormwater at the Airport in areas where AFFF was known to be used during equipment testing, training exercises, and related events." (Compl., RE 1-1, PageID.17, at ¶ 21; *id.* at ¶ 22 ("Areas of known releases of AFFF at the Airport include . . . the former firefighting training area" and "an apron area near the Aircraft Rescue Fire Fighting (ARFF) building").) And the stormwater is regulated under a federal National Permit Discharge Elimination Permit, so its claims involve federal law, not just state law. (*Accord* State Br. 4, 37.) Indeed, the FAA, just like the third-party defendants, may ultimately need to be subject to the district court's jurisdiction for a

fair adjudication of liability in this case (which of course cannot happen if the case stays in state court).

In sum, the State's suit alleging PFAS contamination from firefighting foam relates directly and inextricably to the FAA requiring, supervising, and directing the activities using and discharging PFAS-containing firefighting foam.

## CONCLUSION

For these reasons, this Court should reverse the district court's order remanding the case to state court and hold that the district court had jurisdiction over this case under 28 U.S.C. § 1442(a)(1) upon the Airport Authority's timely and proper removal.

Respectfully submitted,

Dated:  June 21, 2024

By  */s/ Aaron D. Lindstrom*

John Sheehan
**EARTH & WATER LAW**
1455 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004
(202) 280-6362

Charles M. Denton
Aaron D. Lindstrom
Sydney O. Imes
**BARNES & THORNBURG LLP**
171 Monroe Ave NW, Ste. 1000
Grand Rapids, Michigan 495503
(616) 742-3974
aaron.lindstrom@btlaw.com

*Attorneys for Appellant*
*Gerald R. Ford International*
*Airport Authority*

## CERTIFICATE OF COMPLIANCE

I certify that, pursuant to Federal Rule of Appellate Procedure 32 (a)(7)(B) and Sixth Circuit Rule 32, the attached reply brief is proportionately spaced, has a typeface of 14 points, or more and contains 4,847 words.

Dated:  June 21, 2024　　　　**BARNES & THORNBURG LLP**

By _  /s/  Aaron D. Lindstrom_

Aaron D. Lindstrom
BARNES & THORNBURG LLP
171 Monroe Ave NW, Ste. 1000
Grand Rapids, Michigan 495503
(616) 742-3974
aaron.lindstrom@btlaw.com

*Attorney for Appellant*
*Gerald R. Ford International*
*Airport Authority*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2024, I electronically filed the foregoing **APPELLANT'S REPLY BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/   Aaron D. Lindstrom*